# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LAURA MAE S.,               )
)
    **Plaintiff,**            )
)     **No. 18 C 7903**
**v.**                    )
)     **Magistrate Judge Gabriel A. Fuentes**
**ANDREW M. SAUL, Commissioner**   )
**of Social Security,**[1]       )
)
    **Defendant.**       )

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff, Laura Mae S.,[3] applied for Social Security benefits on April 24, 2015, alleging a disability onset date of April 2, 2014, when she was 53 years old. (R. 207-10.) After Plaintiff's applications were denied initially and on reconsideration, the ALJ held a hearing on July 27, 2017. (R. 36.) On November 28, 2017, the ALJ issued a written opinion denying Plaintiff's applications for benefits, and on September 28, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1), making the ALJ's decision the final decision of the Commissioner.

---

[1]The Court substitutes Andrew M. Saul for his predecessor, Nancy A. Berryhill, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[2]On December 27, 2018, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to a United States Magistrate Judge for all proceedings, including entry of final judgment. (D.E. 9.) On May 31, 2019, this case was reassigned to this Court for all proceedings. (D.E. 19.)

[3]The Court in this opinion is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id*. A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id*., citing *Doe v. Blue Cross & Blue Shield United of Wis*., 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing, and it is not clear whether any party could make that showing in this matter. In any event, the Court is abiding by IOP 22 subject to the Court's concerns as stated.

*Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020). Plaintiff seeks remand of the Commissioner's decision (D.E. 18), and the Commissioner has moved to affirm. (D.E. 29.)

## I.    Administrative Record

On April 2, 2014, Plaintiff was in a motor vehicle accident, and over the next few days, she went to the emergency department ("ED") twice with complaints of a dull, aching pain in her back and neck, which ranged from a four to six out of 10 in severity. (R. 343-44, 362.) After imaging showed no fracture but some degenerative changes in her cervical (upper) spine, she was diagnosed with cervical (neck) strain and prescribed Flexeril (a muscle relaxant) and naproxen (a non-steroidal anti-inflammatory drug) for pain. (R. 360-64.) Plaintiff has not worked since the accident. (R. 232.)

On April 15, 2014, Plaintiff visited her treating physician Chantal Sylvie Tinfang, M.D. Plaintiff complained of neck pain and stiffness and moderate back pain. (R. 486-87.) Dr. Tinfang referred Plaintiff to physical therapy ("PT") and prescribed her tramadol (a narcotic) to alternate with naproxen and Flexeril for pain management. (R. 489.) At a follow-up visit on May 20, 2014, Plaintiff had moderate cervical and lumbar (lower back) pain, but normal range of motion ("ROM"), and Dr. Tinfang recommended Plaintiff continue with PT and pain medication. (R. 465-66.) After eight sessions of PT, the physical therapist opined Plaintiff had "progressed well to meet all goals," improving from 46 to four percent impairment. (R. 441.)

On August 3, 2014, Plaintiff went to the ED with bilateral ankle swelling, and she was discharged with instructions to elevate her feet at bedtime. (R. 374, 381.) Three days later, at a checkup with Dr. Tinfang for her hypertension ("HTN") and hyperthyroidism,[4] Plaintiff reported that her neck and back pain were getting better, but she still had moderate pain. (R. 436-38.) In

---

[4]Plaintiff was also diagnosed with Graves' disease, an autoimmune disorder that causes hyperthyroidism, or overactive thyroid. https://www.niddk.nih.gov/health-information/endocrine-diseases/graves-disease.

addition to her thyroid and HTN medication, Plaintiff continued to take naproxen and Flexeril, alternating with tramadol, and she did home exercises she learned in PT. (R. 439.) Plaintiff continued to have moderate pain and normal ROM in April 2015, and Dr. Tinfang recommended Plaintiff continue the same treatment plan. (R. 430-32.) In May and June 2015, Plaintiff filled out Social Security function reports describing trouble sleeping, bending, standing and sitting due to her neck and back pain, as well as foot pain and swelling. (R. 257-58, 265.)

In August 2015, a non-examining state agency medical consultant opined Plaintiff had the physical residual functional capacity ("RFC") to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, and stand/walk/sit for six hours in eight-hour workday (R. 108.) The consultant found Plaintiff could perform her past work as a dietary aide, which she performed at the medium level. (R. 117.) This opinion was affirmed on reconsideration (R. 131.)

On December 1, 2015, Plaintiff submitted another function report stating that her pain had worsened to the point that it brought tears to her eyes. (R. 292.) She described the pain as occurring multiple times a day, lasting 30 to 60 minutes, and spreading from the middle of her neck down to her lower back, legs and feet. (*Id*.) Contemporaneous diagnostic imaging of Plaintiff's cervical spine showed mild multilevel degenerative disc and facet (joint) changes and mild multilevel narrowing of the neural foramina (the openings between the vertebra). (R. 505.) Lumbar spine imaging revealed mild dextroscoliosis (curvature) and degenerative changes. (R. 503.) On January 15, 2016, a neurosurgeon opined that Plaintiff's pain was muscular in nature, and he recommended muscle relaxants and PT. (R. 652-55.) Plaintiff received PT from March to May 2016. (R. 320.)

On April 22, 2016, Dr. Tinfang completed a physical RFC questionnaire for Plaintiff. Dr. Tinfang wrote that Plaintiff had neck and back pain that sometimes reached a level of 10 out of 10, "without improvement" from PT and "minimal improvement" from analgesics, which caused

drowsiness. (R. 507.) Dr. Tinfang opined that Plaintiff could not sit, stand or walk more than two hours total in an eight-hour workday, and only sit for 20 minutes at a time and stand for 30 minutes at a time. (R. 507-08.) Dr. Tinfang further indicated Plaintiff would need to walk around for 15 minutes every 45 minutes due to muscle aches, and could never lift more than 10 pounds. (R. 508.)

On August 24, 2016, Plaintiff returned to Dr. Tinfang. Plaintiff reported having intermittent neck pain ranging in severity from four to 10 out of 10, and sharp, intermittent back pain, ranging from a six to 10 out of 10; her pain was worse with motion. (R. 595.) Plaintiff's cervical and lumbar spine were tender on examination, and her ROM was restricted by pain. (R. 599.) Dr. Tinfang recommended pain management with naproxen and Tylenol pm and Flexeril for muscle spasms, and she referred Plaintiff to PT. (R. 599-600.) Dr. Tinfang's next report, in April 2017, was essentially unchanged. (R. 562-68.) Reports from Plaintiff's endocrinologist during this time indicated Plaintiff's thyroid medications caused increased sleepiness. (R. 576, 633, 636-37.)

## II.    Evidentiary Hearing

At her July 27, 2017 hearing before the ALJ, Plaintiff testified that she did very little around the house; she could sweep, shop, attend church, and make herself a simple meal, but her sister or daughter did most of the housecleaning because the bending involved in mopping, changing linens and doing laundry put too much pressure on her back and neck. (R. 60-61, 70-74, 77, 85.) It recently took her five hours to do three hours of laundry and afterwards, she "felt like [she] had just been ranned [sic] over by a bulldozer." (R. 81-82.) Plaintiff testified that due to pain in her back and neck, she did not sleep well, could only sit for 20 to 30 minutes and stand for 20 minutes, and could not lift or carry a gallon of milk. (R. 58-59, 75.) Her pain medication helped but it made her drowsy. (R. 68.) Occasionally, she had muscle spasms that lasted 20 to 30 minutes. (R. 79-80, 88.)

The vocational expert ("VE") testified that numerous jobs were available for a hypothetical individual who could perform medium work (lifting/carrying up to 50 pounds occasionally and 25 pounds frequently), with frequent balancing and occasional stooping, crouching, kneeling and crawling. (R. 94-95.) A significant number of jobs were also available for individuals who could perform light work or who needed a sit/stand option. (R. 95-98.)

## III.    ALJ's Decision

On November 28, 2017, the ALJ issued an opinion finding Plaintiff was not under a disability within the meaning of the Social Security Act from her alleged onset date of April 2, 2014 through the date of the decision. (R. 16.) The ALJ determined Plaintiff had the severe impairments of neck pain, back pain, and degenerative disc disease but that Plaintiff's HTN, hyperthyroidism and Graves' disease were not severe, and these impairments, alone or in combination, did not meet or medically equal the severity of a listed impairment. (R. 17-18.) The ALJ assigned Plaintiff an RFC to perform medium work, except she could never climb ladders or scaffolds; could frequently climb ramps or stairs; could occasionally stoop, kneel, crouch or crawl; and had to avoid concentrated exposure to unprotected heights, humidity and extreme temperatures. In addition, Plaintiff would be absent from work one day a month. (R. 18.)

The ALJ reviewed the medical evidence and Plaintiff's testimony at the hearing and concluded that her "allegations regarding the severity of her symptoms [were] not generally consistent with the evidence of record." (R. 20.) Although Plaintiff reported having neck and back pain, the ALJ found that examinations "show[ed] mostly normal findings, including normal range of motion, normal strength, a normal gait, negative straight leg raising and normal neurological findings, with some tenderness, reduced range of motion and reduced strength noted at times. The diagnostic images also show mild findings." (R. 21.) In addition, the ALJ stated that "the overall

5

record reveal[ed] minimal and conservative treatment." (*Id.*) The ALJ also noted that Plaintiff went grocery shopping, attended church, dressed herself and prepared simple meals. (*Id.*)

The ALJ gave "little weight" to Dr. Tinfang's RFC opinion, finding it was "not consistent with the overall evidence of record, including Dr. Tinfang's own treatment notes," which "show[ed] mostly normal physical examination findings and minimal diagnostic imaging findings." (R. 22.) The ALJ gave "some weight" to the state agency opinions but found that additional evidence showed Plaintiff was more limited in her ability to perform postural activities. (R. 21.) Ultimately, the ALJ found Plaintiff could perform her past relevant work as well as other jobs that existed in significant numbers in the national economy. (R. 22-24.)

## IV.    Analysis

The Court's review of the ALJ's decision "is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). "The ALJ's decision will be upheld if supported by substantial evidence, which means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) (internal citations and quotations omitted). "An ALJ need not address every piece of evidence," but must "build an accurate and logical bridge" between the evidence and his conclusion. *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017).

Plaintiff makes several arguments for remanding the ALJ's opinion, but this Court focuses on the one that requires remand: the ALJ's failure to adequately assess Dr. Tinfang's opinion. As Plaintiff filed her applications for benefits before March 27, 2017, the "treating physician rule" applies, whereby ALJs must give "controlling weight" to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence." *Burmester v. Berryhill*, 920 F.3d 507, 512 (7th Cir.

6

2019) (quoting 20 C.F.R. § 404.1527(c)(2)). If the ALJ does not give a treating physician's opinion controlling weight, the ALJ must consider the following factors in deciding what weight to give the medical opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability and consistency of the medical opinion with the record, and the physician's specialization. 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and (c)(3)-(5). Under the treating physician rule, an ALJ's failure to sufficiently address the relevant regulatory considerations in declining to afford a treating physician opinion controlling weight requires remand. *Reinaas v. Saul*, 953 F.3d 461, 465-66 (7th Cir. 2020).

In this case, the ALJ did not consider the length, nature or extent of Dr. Tinfang's treating relationship with Plaintiff, nor the frequency of Dr. Tinfang's examinations, before assigning Dr. Tinfang's opinion "little weight." While the Government cites caselaw indicating that the ALJ need not explicitly discuss each of the treating physician factors (Gov.'s Mem. at 11), the ALJ here discussed few of the factors and did so cursorily, so that his opinion was not supported by substantial evidence. Importantly, the ALJ did not consider that Dr. Tinfang treated Plaintiff regularly since July 2011 (R. 507), and "reasonably knew [her] medical history and previous complaints and, thus, could evaluate [her] newly reported symptoms." *Reinaas*, 953 F.3d at 466.

In addition, the ALJ did not adequately explain how Dr. Tinfang's opinion was inconsistent with her own treatment notes. *See Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017) (remanding ALJ's opinion where the ALJ "did not adequately explain the conclusion that [the treating physician's] notes were inconsistent with his opinion.") The ALJ stated that Dr. Tinfang's opinion was "not consistent with the overall evidence of record, including Dr. Tinfang's own treatment notes," which "show[ed] mostly normal physical examination findings and minimal diagnostic imaging findings." (R. 22.) However, in concluding that Dr. Tinfang's opinion was

7

inconsistent with the record, the ALJ did not assess Dr. Tinfang's reports in 2016 and 2017, which documented that Plaintiff's symptoms were worsening: Plaintiff had increased neck and back pain, peaking at a 10 out of 10 in severity, and decreased range of motion due to pain, despite using muscle relaxants, narcotic medication and NSAIDs, and undergoing multiple rounds of PT. By failing to reconcile these reports with his decision to afford Dr. Tinfang's RFC opinion little weight, the ALJ failed to build a logical bridge between the evidence and his decision to give little weight to Dr. Tinfang's opinion. *See Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018) (ALJ erred by failing to "address the fact that [the claimant's] allegations of pain were consistent with the strong prescription pain medication he was taking"); *see also Reinaas*, 953 F.3d at 466 (finding that treating physician's notes documenting that claimant had worsening symptoms and was still in pain despite progress in physical therapy were consistent with the treating physician's opinion).

## **CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's request for remand (D.E. 18) and denies the Commissioner's motion to affirm. (D.E. 29.)

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: October 14, 2020**